IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MICHAEL BIXLER, <br> 843 Locust Grove Road <br> York, Pennsylvania 17402 <br><br>   Plaintiff, <br><br> vs. <br><br> TROOPER FIRST CLASS <br> SEAN HARRIS <br> *(in his individual capacity)* <br> Maryland State Police Barrack D - Bel Air <br> 1401 Belair Road <br> Bel Air, Maryland 21014 <br> (Harford County) <br><br> TROOPER FIRST CLASS <br> WALTER RASINSKI <br> *(in his individual capacity)* <br> Maryland State Police Barrack D - Bel Air <br> 1401 Belair Road <br> Bel Air, Maryland 21014 <br> (Harford County) <br><br> SERGEANT <br> BROOKE TOGNOCCHI <br> *(in her individual capacity)* <br> Maryland State Police Barrack M <br> JFK Memorial Highway <br> 15 Turnpike Drive <br> Perryville, MD 21903 <br> (Cecil County) <br><br> OFFICER TIMOTHY GROVE <br> *(in his individual capacity)* <br> Maryland Department <br> of Natural Resources Police <br> 3738 Gwynbrook Avenue <br> Owings Mills, MD 21117 <br> (Baltimore County) | Case No. _____ <br> **(Jury Trial Demanded)** |

1

| | |
|---|---|
| JOHN DOES 1-99 | *<br>*<br>*<br>* |
| Defendants. | *<br>* |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Michael William Bixler, Jr., by and through his undersigned attorneys, brings this Complaint And Demand For Jury Trial against the above-named defendants and in support thereof, alleges as follows:

### INTRODUCTION

1. This is a common law tort and civil rights action brought pursuant to 42 U.S.C. § 1983 and Articles 24 and 26 of the Maryland Declaration of Rights for monetary damages. The action arises from the defendants' use of excessive force (also constituting assault and battery) during the arrest of Plaintiff in violation of his fourth and fourteenth amendment rights of the United States Constitution and of Articles 24 and 26 of the Maryland Declaration of Rights.

### PARTIES

2. Plaintiff, MICHAEL BIXLER, ("MR. BIXLER") is a citizen of the United States and a resident of York, Pennsylvania.

3. Defendant, TROOPER FIRST CLASS SEAN HARRIS ("HARRIS") is an officer of the Maryland State Police ("MDSP") and is sued in his individual capacity. The MDSP's website has reported that "within the Maryland State Police, all Troopers who complete three years of satisfactory or exceptional service receive a promotion to the rank of Trooper First Class. Troopers generally have the greatest amount of contact with the public of any rank. When a citizen calls for

assistance, it is usually a Trooper who initially responds to assist them. Troopers are on the front lines handling accidents, burglaries, domestic disturbances and other calls for service. They also have the primary responsibility for enforcing traffic and criminal laws while on patrol." (*See* www.mdsp.org) Upon information and belief, HARRIS is a resident of Maryland.

4. Defendant, TROOPER FIRST CLASS WALTER RASINSKI ("RASINSKI") is an officer of MDSP and is sued in his individual capacity. Upon information and belief, RASINSKI is a resident of Maryland.

5. Defendant, SERGEANT BROOKE TOGNOCCHI ("TOGNOCCHI") is an officer of MDSP and is sued in her individual capacity. Upon information and belief, at all times relevant to this Complaint, TOGNOCCHI held the ranking of MDSP corporal. The MDSP's website has reported that, "corporals are the first-line supervisors in the Maryland State Police. They are usually assigned as road supervisors within barracks. In the absence of a Sergeant, they will often act as the duty officer. Corporals at barracks remain active responding to calls for service and taking enforcement action as necessary." (*See* www.mdsp.org) Upon information and belief, TOGNOCCHI is a resident of Maryland.

6. Defendant, OFFICER TIMOTHY GROVE, ("GROVE") is a police officer with the Maryland Department of Natural Resources Police ("DNRP") and is sued in his individual capacity. Upon information and belief, GROVE is a resident of Maryland.

7. Defendants, JOHN DOES 1-99, upon information and belief, are unidentified members of the MDSP, DNRP, and other police officers who participated in the acts of the defendants alleged *infra* in paragraphs 24, 31, 36, 52, 53, 54, 55, 56, 60, 61, and 65 through 79.

8. At all times pertinent to this action, defendants HARRIS, RASINSKI,

3

TOGNOCCHI, AND GROVE (collectively "THE DEFENDANTS" or "DEFENDANTS") defendant officers of MDSP and DNRP, were acting under the color of state law.

9. At all times pertinent to this action, THE DEFENDANTS were acting with malice, reckless or callous indifference to MR. BIXLER'S constitutional rights, and/or with such utter indifference to MR. BIXLER'S constitutional rights that they acted as if such rights did not exist.

## JURISDICTION AND VENUE

10. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) because MR. BIXLER brings civil rights claims under 42 U.S.C. § 1983 for the defendants' violation of his Fourth and Fourteenth Amendment rights under the United States Constitution.

11. Jurisdiction is also conferred on this Court pursuant to 28 U.S.C. § 1332 because the amount in controversy is greater than $75,000.00 and Plaintiff, a resident of Pennsylvania also brings Maryland common law assault and battery tort claims, and state constitutional tort claims against HARRIS, RASINSKI, TOGNOCCHI, and GROVE who upon information and belief, are all residents of Maryland.

12. This Court also has jurisdiction to hear MR. BIXLER'S pendant Maryland common law assault and battery tort claims and Maryland state constitutional tort claims against HARRIS, RASINSKI, TOGNOCCHI, AND GROVE pursuant to 28 U.S.C. §1367(a).

13. Venue is proper in this Court because all of the DEFENDANTS, upon information and belief, are residents of Maryland. Venue is also proper in this Court because the events or omissions giving rise to the claim occurred in Maryland.

## FACTS COMMON TO ALL COUNTS

14. On Saturday, June 13, 2009, MR. BIXLER was visiting Maryland on a family outing.

15. MR. BIXLER commonly visited Maryland for such purposes.

16. As MR. BIXLER, his family, and friends were driving their motorcycles home on Northbound Maryland State Route 136, they encountered what was, upon information and belief, a speed trap conducted by MDSP officers later identified as HARRIS, RASINSKI, and TOGNOCCHI.

17. HARRIS, RASINSKI, and TOGNOCCHI were all in uniform.

18. One of the officers later identified as HARRIS was in the middle of the road waving the motorcycles over. MR. BIXLER did not pull over.

19. As MR. BIXLER rode past HARRIS and the roadblock speed trap, he heard a noise like a gunshot close behind him. He markedly accelerated upon hearing the noise.

20. MR. BIXLER hid in a wooded area. MR. BIXLER called his dad for help, who arrived shortly thereafter.

21. A short time later, MR. BIXLER and his dad encountered a member of the DNRP in uniform, later identified as GROVE.

22. GROVE requested that MR. BIXLER surrender to him.

23. MR. BIXLER peacefully complied with GROVE's order, and allowed himself to be handcuffed at the wrists behind his back, without resisting or attempting to struggle or flee.

24. Shortly thereafter, HARRIS and RASINSKI reached MR. BIXLER and GROVE. Upon information and belief, TOGNOCCHI arrived shortly thereafter as well.

25. When HARRIS, RASINSKI, and TOGNOCCHI arrived, MR. BIXLER remained peacefully on the scene.

26. MR. BIXLER did not attempt to resist or flee.

27. HARRIS approached MR. BIXLER, and without removing GROVE's handcuffs, placed his own set of handcuffs on MR. BIXLER. MR. BIXLER therefore was doubly handcuffed with his wrists behind his back.

28. Once again, MR. BIXLER did not resist, attempt to struggle, or flee while being handcuffed by HARRIS.

29. HARRIS demanded that MR. BIXLER come with HARRIS.

30. MR. BIXLER, without attempting to resist, struggle, or flee, complied with HARRIS's order. MR. BIXLER was placed by HARRIS near the trunk of HARRIS's patrol vehicle.

31. HARRIS's handcuffs on MR. BIXLER were painfully tight. MR. BIXLER asked if it was possible for THE DEFENDANTS to adjust the handcuffs, explaining that they were tight and that they hurt. MR. BIXLER received no response to his request.

32. GROVE remained in the area.

33. HARRIS then ordered the bystanders, including MR. BIXLER'S dad, to leave the area.

34. At HARRIS's command, the bystanders, including MR. BIXLER'S dad left without incident.

35. All the while, MR. BIXLER, while surrounded by THE DEFENDANTS, remained peacefully in their custody.

36. Once THE DEFENDANTS had cleared the area of the bystanders, HARRIS searched MR. BIXLER for weapons or other contraband.

37. MR. BIXLER fully and peacefully cooperated with the search.

38. The search revealed that MR. BIXLER had no weapons or other contraband.

39. HARRIS approached MR. BIXLER again.

40. HARRIS grabbed MR. BIXLER's sunglasses from his head.

41. Instead of following MDSP policy and taking MR. BIXLER's property into custody, HARRIS broke the sunglasses in half and threw them to the ground.

42. MR. BIXLER, although afraid, did not resist, attempt to struggle, or flee.

43. HARRIS next removed MR. BIXLER's ringing cell phone from his pocket.

44. Instead of following MDSP policy and taking the cell phone into custody, HARRIS broke the cell phone and threw it to the ground at Mr. BIXLER's feet. HARRIS also ripped MR. BIXLER's pants.

45. MR. BIXLER, although afraid and upset, did not resist, attempt to struggle, or flee.

46. Because the handcuffs on MR. BIXLER were painfully tight, he started to wriggle his hands to get relief from the pain.

47. When HARRIS accused MR. BIXLER of trying to slip out of the handcuffs, MR. BIXLER explained that he was just trying to get relief from the pain.

48. HARRIS ordered MR. BIXLER to stop wriggling his hands.

49. MR. BIXLER, without attempting to resist, struggle, or flee, complied with HARRIS's order.

50. Although MR. BIXLER had stopped wriggling his hands, HARRIS next ordered MR. BIXLER to place his head on the trunk of HARRIS's patrol vehicle.

51. MR. BIXLER, without attempting to resist, struggle, or flee, complied with the order.

52. HARRIS and/or one or more of THE DEFENDANTS then viciously punched MR. BIXLER several times in the face, blackening his eye, and causing severe facial contusions.

53. The remaining DEFENDANTS did nothing to stop, and acquiesced in, the beating.

54. As MR. BIXLER lay dazed and in great pain, one or more of THE DEFENDANTS viciously jerked MR. BIXLER up from the trunk of HARRIS's patrol car by the handcuffs, causing him to cry out in great pain.

55. One or more of THE DEFENDANTS then threw MR. BIXLER into a nearby ditch, causing cuts and abrasions all over his body.

56. As MR. BIXLER lay on the ground, one or more of THE DEFENDANTS told him to get up or they would "taze" him. HARRIS and RASINSKI jerked MR. BIXLER up forcibly by the handcuffs.

57. The remaining DEFENDANTS did nothing to stop, and acquiesced in, the beating.

58. MR. BIXLER was in such great pain that he started to cry.

59. MR. BIXLER was eventually placed under arrest by HARRIS and taken to the MDSP Bel Air Barracks.

60. Upon information and belief, the DEFENDANTS never disclosed in any of their written reports that any force was inflicted upon MR. BIXLER.

61. Upon information and belief, in contravention of MDSP policy, no Use of Force report was ever prepared in relation to MR. BIXLER by HARRIS, RASINSKI, TOGNOCCHI, and/or any member of the MDSP.

62. MR. BIXLER, suffering great pain in his hands, wrists, face, and left eye, diligently sought medical treatment during his confinement at the Bel Air Barracks and the Harford County Detention Center. However, other than a brief glance at his wrists, no treatment was provided.

63. Upon his release the next day (June 14, 2009), MR. BIXLER went to Memorial

Hospital to seek treatment for his injuries including contusions on his left eye, abrasions on his left and right wrists, swelling and bruising on the left side of his face, a swollen/black left eye, swelling in the right eye, abrasions over his arms and legs and chest, wrist pain, facial pain, head pain, and numbness in both hands. MR. BIXLER sought immediate follow up care for these injuries and limitation of movement in his fingers. The injuries were so severe that he was forced to miss over a month of work.

64.   MR. BIXLER continues to suffer chronic injuries in his wrists, hands, and fingers as a result of the excessive force used by THE DEFENDANTS. Because of his injuries, MR. BIXLER continues, and will continue throughout his life, to experience physical, mental, and emotional pain and suffering.

## COUNT I

(42 U.S.C. § 1983 –Excessive Force—All defendants.)

65.   MR. BIXLER hereby incorporates by reference the factual allegations contained in paragraphs 14 through 64 of this Complaint.

66.   THE DEFENDANTS, as police officers, have a duty to refrain from excessive force in taking MR. BIXLER into custody and to prevent the use of excessive force by a fellow officer. HARRIS, RASINSKI, TOGNOCCHI, AND GROVE, individually and/or collectively, acted at all times relevant intentionally, unreasonably, wantonly, maliciously, and/or with such utter indifference to MR. BIXLER'S constitutional rights that they acted as if such rights did not exist, and under color of state law, and without reasonable reliance on that law, employed, supervised, and/or after having a reasonable opportunity to intervene in the use of excessive force employed against MR. BIXLER, knowingly failed to intervene in the use of excessive force in effectuating a seizure and arrest of MR.

BIXLER, in deprivation of MR. BIXLER'S clearly established rights under the Fourth and Fourteenth Amendments of the Constitution of the United States of America.

67. HARRIS, RASINSKI, TOGNOCCHI, AND GROVE's unlawful use of excessive force caused MR. BIXLER to suffer significant physical, mental, emotional, and monetary injuries.

## Count II

(Assault—All defendants.)

68. MR. BIXLER hereby incorporates by reference the factual allegations contained in paragraphs 14 through 64 of this Complaint.

69. HARRIS, RASINSKI, TOGNOCCHI, AND GROVE, individually and/or collectively, acting at all times relevant intentionally, unreasonably, maliciously, and/or with gross negligence, intentionally and unlawfully attempted to or actually committed acts and/or made threats that put MR. BIXLER in immediate fear and/or apprehension of being harmfully or offensively touched and/or aided and abetted such conduct.

70. As a proximate and direct result of HARRIS, RASINSKI, TOGNOCCHI, AND GROVE's conduct, MR. BIXLER was caused to suffer significant physical, mental, emotional, and monetary injuries.

## COUNT III

(Battery—All defendants.)

71. MR. BIXLER hereby incorporates by reference the factual allegations contained in paragraphs 14 through 64 of this Complaint.

72. HARRIS, RASINSKI, TOGNOCCHI, AND GROVE, individually and/or collectively, acting at all times relevant wantonly, maliciously, and/or with gross negligence,

employed, supervised, and/or knowingly intentionally and nonconsensually touched MR. BIXLER in an offensive and/or harmful manner and/or aided or abetted such conduct.

73. As a proximate and direct result of the HARRIS, RASINSKI, TOGNOCCHI, AND GROVE's conduct, MR. BIXLER was caused to suffer significant physical, mental, emotional, and monetary injuries.

## COUNT IV

(Violation of the Maryland Declaration of Rights Article 24-All defendants)

74. MR. BIXLER hereby incorporates by reference the factual allegations contained in paragraphs 14 through 64 of this Complaint.

75. HARRIS, RASINSKI, TOGNOCCHI, AND GROVE, individually and/or collectively, acting at all times relevant unreasonably, wantonly, maliciously, and/or with such utter indifference to MR. BIXLER'S constitutional rights that they acted as if such rights did not exist, and under color of state law, employed, supervised, and/or knowingly failed to stop the use of excessive and unjust force in effectuating a seizure and arrest of MR. BIXLER, in deprivation of MR. BIXLER'S rights under Article 24 of the Maryland Declaration of Rights.

76. HARRIS, RASINSKI, TOGNOCCHI, AND GROVE's unlawful use of excessive force caused MR. BIXLER to suffer significant physical, mental, emotional, and monetary injuries.

## COUNT V

(Violation of the Maryland Declaration of Rights Article 26-All defendants)

77. MR. BIXLER hereby incorporates by reference the factual allegations contained in paragraphs 14 through 64 of this Complaint.

78. HARRIS, RASINSKI, TOGNOCCHI, AND GROVE, individually and/or

collectively, acting at all times relevant unreasonably, wantonly, maliciously, and/or with such utter indifference to MR. BIXLER'S constitutional rights that they acted as if such rights did not exist, and under color of state law, employed, supervised, and/or knowingly failed to stop the use of excessive and unjust force upon MR. BIXLER, in deprivation of MR. BIXLER'S rights under Article 26 of the Maryland Declaration of Rights.

79.    HARRIS, RASINSKI, TOGNOCCHI, AND GROVE's unlawful use of excessive force caused MR. BIXLER to suffer significant physical, mental, emotional, and monetary injuries.

## RELIEF SOUGHT

80.    MR. BIXLER hereby incorporates by reference the factual allegations contained in paragraphs 14 through 64 of this Complaint.

81.    MR. BIXLER seeks $1,000,000.00 for actual and compensatory damages as a result of his injuries plus any additional amount deemed equitable and proper by this Court.

82.    MR. BIXLER seeks $3,000.000.00 as punitive damages as a result of THE DEFENDANTS acting with malice, evil motive, or intent, and/or reckless or callous indifference to MR. BIXLER's rights, plus any additional amount deemed equitable and proper by this Court.

83.    MR. BIXLER seeks attorneys' fees, costs, and expenses pursuant to 42 U.S.C. §1988(b) and other applicable law.

84.    MR. BIXLER also seeks such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff elects a trial by jury for each and every Count alleged in this Complaint.

Respectfully Submitted,

*/s/ Joshua M. Ambush*

Joshua M. Ambush
Bar No. 27025
Law Offices of Joshua M. Ambush, LLC
1726 Reisterstown Road, Ste. 206
Baltimore, Maryland 21208
(410) 484-2070 (telephone)
(410) 484-9330 (facsimile)
Joshua@ambushlaw.com

*/s/ Isaac Klein (signed by Jennifer Kent, Esq. with the permission of Isaac Klein.)*

Isaac Klein
Bar No. 26946
Attorney-at-Law
One North Charles Street Suite 350
Baltimore, Maryland 21201
(410) 727-4880 (telephone)
(410) 727-6302 (facsimile)
ikleinlaw@aol.com